## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BYRON ADAMS, #A-60952** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-0366-JPG** |
| | ) | |
| **RICHARD HARRINGTON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Byron Adams, who is currently incarcerated at Menard Correctional Center, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1).   Richard Harrington, warden at Menard, is the only named defendant.   Plaintiff alleges that he was subjected to unsafe conditions in his cell caused by the malfunctioning of a steam pipe under the cell floor, which resulted in severe burns on both of his feet. *Id*. at 5.   Plaintiff seeks monetary damages and an inspection of the heating system that caused the alleged unsafe conditions. *Id*. at 11-12.

The complaint comes now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.  Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).

1

**The Complaint**

According to the allegations in the complaint, on January 24, 2014 Plaintiff was transferred from one unit in Menard to another. (Doc. 1, ¶ 1). Upon his transfer, Plaintiff was not informed that some malfunction with the heating pipes in the new unit made the cell floor extremely hot. *Id*. On January 27, Plaintiff, who had been sitting on his bunk with his feet on the floor for several hours, discovered that he had burns on the bottom of his feet. (Doc. 1, ¶¶ 3-4). Plaintiff is diabetic and suffers from neuropathy, a condition which interferes with his ability to sense heat. (Doc. 1, ¶ 10). The next day, Plaintiff was admitted to the health care unit and remained there until March 5. During that time he received daily treatment for the burns on his feet. (Doc. 1, ¶¶ 6-7).

On January 29, an unnamed officer from internal affairs visited Plaintiff in the health care unit to inquire about the burns on Plaintiff's feet. (Doc. 1, ¶ 8). Plaintiff claims he told the officer about the hot floor in his cell and the officer said he would investigate and take a statement from Plaintiff. *Id*. The officer later returned and confirmed that the floor was hot, but never took a statement from Plaintiff. (Doc. 1, ¶ 9).

On March 5, Plaintiff was released from the health care unit and transferred back to the same cellhouse, but to a new cell. The new cell was four cells away from the cell where his feet had previously been burned. (Doc. 1, ¶ 12). Plaintiff claims that the floor of his new cell was hotter than the old cell. (Doc. 1, ¶ 15-16). At that time, Plaintiff maintains that his burns were not yet completely healed (Doc. 1, ¶ 13) and he continued to visit the health care unit to receive treatment for his burns (Doc. 1, ¶ 14).

On March 9, Plaintiff woke up during the night and noticed that his feet were bleeding. (Doc. 1, ¶ 18). He informed two (unnamed) guards. Plaintiff alleges that the first guard did

2

nothing. *Id*.  The second guard said that he would call the sergeant on duty; the second guard later told Plaintiff that he had called the nurse on duty and informed her of the situation; the (unnamed) nurse allegedly said that Plaintiff would have to wait until March 11 – his regularly scheduled appointment time – to have his dressings changed. (Doc. 1, ¶ 21).  However, the next morning, March 10, a female officer on duty noticed the blood on Plaintiff's socks and sheets and took him immediately to the health care unit. (Doc. 1, ¶ 22).  Plaintiff was seen by a nurse and a doctor who confirmed that Plaintiff had new burns on his feet. (Doc. 1, ¶ 24).  Plaintiff received treatment and then was returned to his cell once again, despite a nurse's request that he be admitted to the health care unit. (Doc. 1, ¶ 26-27).  On March 11, pursuant to an order from the assistant warden, Plaintiff was transferred back into the health care unit. (Doc. 1, ¶ 28).  Plaintiff was still housed in the health care unit on March 21, the date he filed this complaint.  On that date, Plaintiff still had wraps on both of his feet and was unable to wear shoes or walk on his own. (Doc. 1, ¶ 34).

**Discussion**

Plaintiff alleges that the conditions of his confinement in late January 2014 and again in early March 2014 were so unsafe that they constituted a violation of Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment.  Plaintiff names Richard Harrington, warden at Menard, as the sole defendant in his complaint.  The complaint does not state whether Plaintiff is suing Harrington in his individual or official capacity. (*See* Doc. 1).  For clarity, the Court has broken Plaintiff's Eighth Amendment claims into two counts: Count 1 addresses Plaintiff's claim for monetary damages; Count 2 is Plaintiff's claim for injunctive relief.

The Eighth Amendment's prohibition of cruel and unusual punishment is applicable to the states through the Fourteenth Amendment. It has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Id.,* (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Constitution also prohibits punishment that is totally without penological justification. *Gregg*, 428 U.S. at 183.

Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id*. The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim. The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. The subjective component requires that a prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992).

**<u>Count 1:</u>**

At this juncture, Plaintiff has adequately alleged facts suggesting that the conditions in his cell were "sufficiently serious." He has also alleged facts that, if true, would suggest that the conditions were caused by the acts or omissions of prison officials. What is less clear is whether Plaintiff has stated a colorable claim against any "person," so as to proceed with an action for damages under § 1983.

Although the statement of the claim goes into great detail about the actions or inactions of certain individuals, most of these individuals are not identified by name and none are named

as defendants in the case.  Defendant Harrington, warden at Menard, is the only individual named as a defendant by Plaintiff; ironically, he is not mentioned once in the statement of the claim.

In order to be held individually liable, a defendant must be "'personally responsible for the deprivation of a constitutional right.'"  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).  Other than naming Defendant Harrington in the caption, the complaint does not allege a single fact related specifically to Harrington.  Merely naming a defendant in the caption is insufficient to state a claim.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).

The reason that plaintiffs, even those proceeding *pro se*, for whom the Court is required to liberally construe complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint.  Thus, where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Having failed to mention Defendant Harrington in the statement of the claim, the complaint falls short of establishing liability against him in his individual capacity at this time.  The Court, therefore, must dismiss Count 1, but will do so without prejudice.  Because it seems possible that Plaintiff could plead facts to support a claim of deliberate indifference on the part of Warden Harrington or other prison officials, the Court will grant Plaintiff leave to amend his complaint. However, if he wishes to amend his complaint, Plaintiff is advised that he must provide the names of individuals who were personally responsible for the conditions, and facts alleging how they were responsible.

**Count 2:**

Absent any individual liability, a warden may still be liable in his official capacity, but only for purposes of securing injunctive relief.  *See Delaney v. DeTella*, 256 F.3d 679, 687 (7th Cir. 2001) (warden could be liable for injunctive relief relative to a prison policy imposing an unconstitutional condition of confinement).  Because Plaintiff is seeking injunctive relief,[1] and the Court finds that Plaintiff has alleged facts at this stage sufficient to support a conditions of confinement claim, Defendant Harrington shall remain in the action in his official capacity.  *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

**Pending Motions**

Plaintiff has filed a motion requesting that a picture be taken of his feet (Doc. 6).  Although this is an unusual request, it is essentially a request to preserve evidence.  The Court, in its discretion, **GRANTS** the motion (Doc. 6).   Defendant **HARRINGTON** shall make arrangements to have photos taken of the burns on Plaintiff's feet as soon as practical.

Also **PENDING** before the Court is a motion for recruitment of counsel (Doc. 3) and a motion to add affidavit to complaint (Doc. 7).  These motions shall be addressed by the Court in a separate order.

**Disposition**

**IT IS HEREBY ORDERED** that Plaintiff's claim for damages against Defendant **HARRINGTON (Count 1)**, in his individual capacity, is **DISMISSED** without prejudice.  Plaintiff's claim for injunctive relief against Defendant **HARRINGTON (Count 2)**, in his official capacity, **SHALL PROCEED**.

---

[1] The Court construes Plaintiff's request to "have the pipe checked" as a prayer for injunctive relief.

**IT IS FURTHER ORDERED** that, should he wish to proceed with Count 1, Plaintiff shall file his First Amended Complaint, stating any facts which may exist to support a conditions of confinement claim and naming the individual defendants directly responsible for the alleged constitutional deprivations, within 35 days of the entry of this order (on or before **May 20, 2014**).  An amended complaint supersedes and replaces the original complaint, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004).  The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must stand on its own, without reference to any other pleading.  Should the First Amended Complaint not conform to these requirements, it shall be stricken.  Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.  Failure to file an amended complaint shall result in the dismissal of Count 1 with prejudice.

The Clerk of Court shall prepare for Defendant **HARRINGTON**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending

the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendant or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even if his application to proceed *in forma pauperis* is granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court,

who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 15, 2014**

*s/ J. Phil Gilbert*
United States District Judge