IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BYRON E. ADAMS,                              )
                                             )
      Plaintiff,                         )
                                             )
      v.                                 )      Case No. 3:14-cv-366-NJR-DGW
                                             )
RICHARD HARRINGTON, SAMUEL                   )
NWAOBASI, and BRADLEY J.                     )
STIRNAMAN,                                   )
                                             )
                                             )
      Defendants.                        )

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

    This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a).  For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment on the Issue of Exhaustion (Doc. 47) be **GRANTED IN PART and DENIED IN PART**, and that the Court adopt the following findings of fact and conclusions of law.

### BACKGROUND

    Plaintiff, Byron E. Adams, who is currently incarcerated at the Pontiac Correctional Center, alleges that while he was housed at the Menard Correctional Center, he was subjected to unconstitutional conditions of confinement, deliberate indifference to his medical needs, and excessive force.

Plaintiff alleges that on January 24, 2014, he was transferred to the South Lower cell house and placed in Cell 118.  A few days later, Plaintiff notice blood on his right sock and discovered a blister on his right heel due to floors that became extremely hot because of a broken steam pipe.  The next day, on January 28, 2014, he further noticed a burn on his left big toe and a blister the sole of his left foot.  Plaintiff states that he did not feel the temperature of the floor because he suffers from diabetic neuropathy in his feet.[1]  Plaintiff requested and saw a nurse on that day and was taken, by wheelchair, to the infirmary where his feet were treated by Dr. Nwaobasi.  Plaintiff remained in the infirmary until March 5, 2014.  He was then returned to Cell 114, which had the same hot floor.  However, Plaintiff was transferred back to the infirmary on March 11, 2014 because his feet were still bleeding.  During this time period, Plaintiff could not walk and required the use of a wheelchair.

While Plaintiff was housed in the infirmary, he alleges that Defendant Stirnaman, a correctional officer, continually entered his room and harassed him.  Plaintiff further alleges that the harassment continued when he was placed back in the cell house and when he was returned to the infirmary on March 11, 2014.  On or about March 31, 2014, Plaintiff alleges that Defendant Stirnaman entered his room, slapped and punched him and caused him to fall from his bed; when officers responded to Plaintiff's yells, Defendant Stirnaman indicated that Plaintiff had assaulted him and Plaintiff was handcuffed and placed in temporary confinement.  Plaintiff subsequently was disciplined for the incident.

---

[1] Plaintiff alleges that he suffers for diabetes but that his insulin was discontinued upon his transfer to Menard on December 18, 2012.  Insulin was not re-prescribed until May 6, 2014.

Thereafter, on May 5, 2014, Plaintiff's right big toe was amputated by an outside Clinic. Plaintiff alleges that the assault by Defendant Stirnaman caused trauma to his left eye which required treatment beginning in October 19, 2014.

As a result of these events, Plaintiff alleges that Dr. Nwaobasi was deliberately indifferent to his serious medical needs by failing to properly treat the injuries to his feet, leading to the amputation of a digit. Plaintiff further alleges that Defendant Harrington, the Warden at Menard, also was deliberately indifferent to his serious medical needs (Count 1). Plaintiff alleges that Defendant Stirnaman used excessive force on March 31, 2014 (Count 2). Finally, Plaintiff alleges that Defendant Harrington caused unconstitutional conditions of confinement by exposing Plaintiff to excessively hot floor that burned his feet (Count 3).

Plaintiff filed his original Complaint on March 21, 2014 (Doc. 1) asserting claims against Defendant Harrington only. In an Order entered pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on a claim for injunctive relief against Defendant Harrington, in his official capacity, for unconstitutional conditions of confinement. Within 21 days of service of the Complaint, Plaintiff filed an Amended Complaint on April 13, 2014 (Doc. 13). [2] The Amended Complaint added claims against Defendants Nwaobasi and Stirnaman for inadequate medical care and excessive force, respectively. Finally, after counsel was recruited, Plaintiff filed a Second Amended Complaint on October 6, 2014 (Doc. 34). As noted above, Count 1 is a deliberate indifference to a serious medical need claim against Defendants Harrington (in his individual and official capacity) and Nwaobasi. Count 2 is an excessive force claim against

---

[2] In another case filed in this District and pending before District Judge J. Phil Gilbert, *Byron E. Adams v. V. Smith, et al.*, 3:13-cv-985-JPG-PMF, Plaintiff presented the claims pending in this case to Magistrate Judge Phillip Frazier during the course of preliminary injunction proceedings. *See* 3:13-cv-985, Doc. 86, pp. 3-4. Plaintiff specifically indicated, at an April 7, 2014 hearing, that he sustained burns to his feet because of a steam pipe in his cell and that he was assaulted by a correctional officer on March 31, 2014. *Id.*

Defendant Stirnaman related to the March 31, 2014 incident.    And, Count 3 is a conditions of confinement claim against Defendant Harrington in his individual and official capacities.

Currently before the Court is a Motion for Summary Judgment filed by Defendants Harrington and Stirnaman arguing that Plaintiff failed to exhaust his administrative remedies prior to filing suit (Doc. 47).  Plaintiff filed a response on March 13, 2015 (Doc. 54).  Defendant Nwaobasi has asserted the affirmative defense of failure to exhaust administrative remedies but has not filed a motion to that effect (the deadline expired prior the filing of an answer).

On June 2, 2015 a hearing was held on the Motion pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).   Plaintiff appeared counsel and in person and Defendants appeared by Counsel.   At the hearing, Defendant Nwaobasi indicated that they would also seek dismissal of the claims against him if the Court found that Plaintiff failed to exhaust his administrative remedies.

### FINDINGS OF FACT

On March 18, 2014, Plaintiff submitted an emergency grievance to Warden Harrington complaining that the floors in his cell were too hot and caused burns to his feet (Byron Adams Affidavit ¶ 3; Doc. 54-1).  The grievance complained of both the excessively hot floors and the medical care that Plaintiff received (Doc. 1-1, pp. 2-4).   Plaintiff put the grievance in the grievance box in the Health Care Unit.  While the Warden received three emergency grievances on March 18, 2014 from other inmates, there is no record that he received or reviewed Plaintiff's grievance.  Plaintiff did not get a response to this grievance.  Plaintiff submitted his complaint to this Court on March 20, 2014 (it was filed on March 21, 2014) alleging claims against Warden Harrington regarding the excessively hot floors.  At the hearing, Plaintiff testified that when he submitted the March 18, 2014 grievance, he was housed in the Health Care Unit and did not

know when he would be returned to his cell.  It is undisputed, however, that the condition complained of, the excessively hot floors, began in January, 2014.

Defendants produced, at the hearing, an "Emergency Grievance Log" which indicates that Plaintiff filed two emergency grievances on March 28, 2014.  One concerned "burned feet" and the other concerned "c/o Stairman."  The record contains no copies of these grievances.[3] Both grievances were deemed to be non-emergencies.

On April 21, 2014, Plaintiff submitted an emergency grievance, in the same manner as the March 18, 2014 grievance, regarding the alleged March 31, 2014 assault by Defendant Stirnaman (Adams Aff. ¶ 4).  In the April 21, 2014 grievance, Plaintiff complained that Defendant Stirnaman attacked him and falsely accused him of assaulting Stirnaman (Doc. 48-2, pp. 16-17).  The Warden responded on April 29, 2014 that it was not an emergency (*Id.*). Plaintiff states that he eventually received a response to the grievance (Adams Aff. ¶ 4).  There is no indication that he either appealed the Warden's decision (that it was not an emergency) or that he subsequently filed a non-emergency grievance while at Menard.  The Emergency Grievance Log indicates that this grievance was received by the Warden on April 29, 2014 and that a response was sent to Plaintiff on April 30, 2014.

Plaintiff testified at the hearing that Defendant Stirnaman was assigned to the healthcare unit 2 days a week while he was housed there.  He indicated that Defendant Stirnaman harassed him in various ways by taking away his wheelchair, calling him "bitch," and ignoring requests for assistance with legal correspondence and laundry.   Plaintiff believes that he was harassed and assaulted by Defendant Stirnaman because of the other suit he has pending in this District.

---

[3] Plaintiff attached a March 31, 2014 grievance to his Amended Complaint which concerns money missing from his account but which does not concern any of the claims raised in this lawsuit (Doc. 13, p. 34).

After Stirnaman assaulted Plaintiff on March 31, 2014, Plaintiff told Magistrate Judge Frazier that he was assaulted at an April 7, 2014 hearing.  Plaintiff was issued a disciplinary ticket regarding the March 31, 2014 incident on April 14, 2014 – he was found guilty and certain privileges were taken away (Adams Aff. ¶ 23).  A few days later, Stirnaman told Plaintiff that he "fucked up" (Adams Aff. ¶ 24).  On April 18, 2014, Plaintiff filed his amended complaint in this Court regarding the March 31, 2014 assault.  He filed a grievance regarding the assault on April 21, 2014 and eventually received a response.  Plaintiff is credible in his assertion that he was intimidated into not filing a grievance as to the March 31, 2014 assault.

### CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005).  The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).  *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).  A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.*  The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show

what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

> The Prison Litigation Reform Act provides:
>
> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).  *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983).  Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006).  The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.  In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies.  *Id.* 544 F.3d at 742.  If a Plaintiff has exhausted his remedies, the case will proceed on the merits.  If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor.  ILL. ADMIN. CODE TIT. 20, § 504.810(a).  If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance.  *Id*. §504.810(b).  The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance.  *Id.* §504.830(d).  The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d).  An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision.  *Id.*, § 504.850(a).  *See also Dole*, 438 F.3d at 806-07.  An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO.  If the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken.  *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances.  *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005).  The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue."  *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009).  If further remedies are unavailable to the prisoner, he is deemed to have exhausted.  *Id.*  Prisoners are required only to provide notice to

"responsible persons" about the complained-of conditions.  *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)).   An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance.  *See Kaba*, 458 F.3d at 684.

**March 18, 2014 Grievance**

As noted above, Plaintiff submitted this emergency grievance regarding the conditions of his confinement two days prior to submitting the complaint in this matter alleging that the floors in his cell were excessively hot.  Plaintiff argues that he did not wait longer for a response because he believed he would never get a response, as demonstrated by the lack of response to previous grievances.

The relevant regulations do not provide a timeline for when a warden must respond to an emergency grievance.  However, in *Fletcher v. Menard Correctional Center*, 623 F.3d 1171 (7th Cir. 2010), the Seventh Circuit indicated, in circumstances similar to Plaintiff's situation, that two days was in insufficient time to wait for a response.  In that case, the plaintiff alleged to have been beaten by a correctional officer and filed an emergency grievance that same day.  *Id.* at 1174.  Despite being no longer in danger, he filed suit two days thereafter.  The Court stated that he "had an available such remedy, and – the danger being not of the greatest urgency – he had to wait more than two days to test its availability before he could sue."  *Id.* at 1175.  In this case, Plaintiff also was not in any imminent danger such that he could not wait for a response to his emergency grievance.   At the time that he filed the March 18, 2014 grievance, he was indefinitely housed in the health care unit and there was no evidence that he was going to be transferred back to the cell with the excessively hot floors.

Plaintiff argues that not only the failure to respond within two days rendered the administrative process unavailable, but also the history of failing to receive any responses to his

grievances.  Such an argument is similar to a futility argument – a claim that is not an exception to the exhaustion requirement.  *See Booth v. Churner*, 532 U.S. 731 (2001) (holding that the fact that a prison cannot award the remedy requested does not excuse an inmate from pursuing administrative remedies).  While the Court is mindful that the grievance process at Menard is neither efficient nor perfect, such a fact would not excuse an inmate from pursuing his administrative remedies.  As noted in relation to the futility argument, an inmate must file a grievance if the prison has the power to consider it and take some action in response.  *Larkin v. Galloway*, 266 F.3d 718, 724 (7th Cir. 2001).  There is no evidence that prison officials at Menard were without the power to consider a grievance and give a response.  The PLRA and the Seventh Circuit require strict compliance with the exhaustion of administrative remedies.  The fact that Menard may not have responded to a majority of Plaintiff's grievances would not render the administrative remedies wholly unavailable as to subsequent grievances.  Such a holding would nullify the entire administrative process at Menard.  Plaintiff had both the familiarity and means to submit a grievance as to the conditions of confinement; and, he in fact did submit such a grievance.  Plaintiff failed, however, to wait an appropriate time for a response to his emergency grievance prior to filing suit.

### April 21, 2014 Grievance

By this grievance, Plaintiff complained of the actions of Defendant Stirnaman on March 31, 2014.  This grievance was filed *after* Plaintiff filed his amended complaint claiming that Stirnaman used excessive force on that date.  Plaintiff argues that he did not file a grievance prior to filing the amended complaint because of intimidation and retaliation he suffered from earlier lawsuits and grievances.  *See Kaba*, 458 F.3d at 686.  At this stage of the proceedings, and viewing the facts in a light most favorable to Plaintiff, the evidence reveals that Plaintiff was

harassed by Defendant Stirnaman throughout his stay in the healthcare unit in retaliation for Plaintiff's previously filed lawsuit and grievances. This retaliation culminated in the March 31, 2014 assault and the subsequent false disciplinary ticket.[4]  Plaintiff, who was familiar with the grievance process and the necessity of filing a grievance prior to filing suit, was intimidated into not filing a grievance prior to filing his claim against Defendant Stirnaman.  Indeed a person of ordinary firmness would have been deterred from filing a grievance in light of the continual harassment, the assault, and the false disciplinary charges that led to the loss of privileges.  *See Schultz v. Pugh*, 728 F.3d 619, 620-621 (7th Cir. 2013).  This intimidation and retaliation made the grievance process unavailable.  *See Dole*, 438 F.3d at 809 (finding that administrative remedies become unavailable if prison officials "use affirmative misconduct to prevent a prisoner from exhausting").  Defendants are therefore not entitled to summary judgment, on the basis of exhaustion, on the excessive force claim.

### RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendants Richard Harrington and Bradley J. Stirnaman, on February 17, 2015 be **GRANTED IN PART and DENIED IN PART** (Doc. 47), that Count 3 of the Second Amended Complaint be **DISMISSED WITHOUT PREJUDICE**, and that the Court adopt the foregoing findings of fact and conclusions of law.   In light of this recommendation, the only claims that would remain are Count 1 against Defendants Harrington and Nwaobasi and Count 2 against Defendant Stirnaman.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto.  The

---

[4] Defendants presented no evidence contradicting Plaintiff's version of events.

failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: August 25, 2015**

**DONALD G. WILKERSON**
**United States Magistrate Judge**